**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>ANDREW DEWAYNE CARTER,<br><br>    Defendant. | Case No. 2:15–cr–322–KJD–VCF<br><br>**REPORT AND RECOMMENDATION**<br><br>Motion to Suppress Oral Statements (Doc. #28) |

  This matter involves the United States of America's prosecution of Defendant Andrew Dewayne Carter. Before the court is Carter's Motion to Suppress (Doc. #28), the Government's response (Doc. #31), and Carter's reply (Doc. #32). For the reasons stated below, Carter's motion to suppress should be granted.[1]

**I. Background**

  In August 2015, the Las Vegas Metropolitan Police Department (hereafter "Metro") began investigating the possible sex trafficking of a juvenile. One victim identified Defendant Andrew Dewayne Carter as an individual who was involved in her prostitution. At the time, Carter was in custody at the Clark County Detention Center (hereafter "CCDC") on unrelated charges.

  On September 18, 2015, Carter was interviewed by Metro Detective VanCleef about Carter's possible involvement in sex trafficking and prostitution. The interview was recorded and transcribed. Detective VanCleef identified himself and asked Carter several preliminary questions such as his name and date of birth. Detective VanCleef then gave Carter the following *Miranda* warnings:

---

[1] The parties do not dispute any material facts that are relevant to the issues presented. An evidentiary hearing is not required.

1

"Okay Andrew, um, you have the right to remain silent. Anything you says can be used against you in a court of law. You have the right to the presence of an attorney. If you can't afford an attorney one will be appointed before questioning. Do you understand your right?"

Carter responded that he understood his rights. Detective VanCleef questioned Carter about his background, his interests, and why he was in CCDC, before moving on to questions about Carter's possible involvement in sex tracking and prostitution. Carter acknowledged possibly knowing the victim, but when Detective VanCleef questioned Carter about the details of his alleged involvement with the victim; Carter made the following statement:

Carter: "Do I need a lawyer for this? Am I going to need a lawyer?"

Detective VanCleef: "I can't – I can't – I can't advise you yes or no. If you want one …"

Carter: "I mean I don't, um, you feel me? I don't like where this is going already."

Detective VanCleef: "Fine." (hereafter "Carter's First Request for Counsel")

Detective VanCleef then asked Carter if he ever brought the victim to Las Vegas. Carter acknowledged that he had provided a girl with a room at a motel near his apartment. Before Detective VanCleef could ask further questions, Carter stated as follows:

Carter: "But I think I'm – I think I'm going to get a lawyer on this one."

Detective VanCleef: "Okay" (hereafter "Carter's Second Request for Counsel")

Detective VanCleef continued to converse with Carter before telling Carter he was being rebooked on charges related to sex trafficking of a juvenile. Carter was later indicted by a federal grand jury on five counts related to sex trafficking of a juvenile. Carter now moves to suppress incriminating statements he made in his interview with Detective VanCleef on two grounds: (1) Carter received

2

inadequate *Miranda* warnings and (2) Detective VanCleef failed to respect Carter's invocation of his *Miranda* right to counsel.[2]

## II. Legal Standard

The Fifth Amendment guarantees no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend V. From this guarantee, courts derived the *Miranda* rule, which states that "the prosecution may not use statements … stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 346, 444 (1966). The *Miranda* decision also "established certain procedural safeguards that require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation." *Duckworth v. Eagan*, 492 U.S. 195, 202 (1984).

"In now-familiar words, the Court said that the suspect must be told that 'he has [1] the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that is he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Id.* at 201-02 (1989) (citing *Miranda v. Arizona*, 384 U.S. 346 (1966)).

The right to have an attorney present includes the right to consult with an attorney before answering any questions. *Florida v. Powell*, 559 U.S. 50, 60 (2010) ("an absolute prerequisite to interrogation, that an individual held for questioning must clearly be informed that he has the right to

---

[2] The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. "The Sixth Amendment right [to counsel] … is offense specific." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). The Sixth Amendment right to counsel "does not attach until a prosecution is commenced, that is, at or after the initiation of adversar[ial] judicial criminal proceedings." *Id.* Here, Carter's Sixth Amendment right to counsel is not implicated. At all relevant times during Carter's interview, Carter had yet to be booked, let alone formally prosecuted for, any crimes related to sex trafficking or prostitution.

consult with a lawyer and to have the lawyer with him during interrogation"); se*e also People of the Territory of Guam v. Snaer*, 758 F.2d 1341, 1342 (9th Cir. 1985).

"No talismanic incantation [is] required to satisfy [*Miranda*'s] strictures," *California v. Prysock*, 453 U.S. 355, 359 (1981); rather the relevant inquiry is whether the warnings given "adequately convey notice of the right to consult with an attorney before questioning." *Snaer*, 758 F.2d at 1342.

Incriminating statements made after inadequate *Miranda* warnings must be suppressed. *United States v. Botello-Rosales*, 728 F.3d 865, 867-68 (9th Cir. 2013); *see also United States v. Bland*, 908 F.2d 471, 474 (9th Cir. 1990) (declining to address the issue of the defendant's waiver of his *Miranda* rights after finding that the defendant's confession should have been suppressed due to inadequate *Miranda* warnings).

### III. Discussion

The parties present two issues[3]: (1) whether Carter received adequate *Miranda* warnings and (2) whether Carter's interview should have been terminated after his first request for counsel.

1.  <u>Carter Received Inadequate *Miranda* Warnings</u>

It is well established that the right to the presence of counsel includes the right to consult with an attorney before answering any questions. *Powell*, 559 U.S. at 62 ("right to talk to a lawyer before answering any questions" adequately conveyed right); *see also Snaer*, 758 F.2d at 1342.

Here, Carter received inadequate *Miranda* warnings. Detective VanCleef's *Miranda* warnings did not <u>explicitly state</u> that Carter had the right to consult or talk to an attorney <u>before</u> answering any questions. Nor did Detective VanCleef's warnings <u>adequately convey</u> Carter's right to talk to an

---

[3] The Government does not dispute Carter's assertion that he was in "custody" for *Miranda* purposes during his interview with Detective VanCleef. (Doc. #31). As neither parties raises the issue of "custody," the court's analysis assumes Carter was in "custody" at all relevant times during his interview.

attorney <u>before</u> answering any questions; at best, they conveyed to Carter that he could ask for an attorney to be appointed at any time during the questioning.[4]  The *Miranda* warnings Carter received failed to adequately inform him of his right to consult with an attorney <u>before</u> answering any questions. Accordingly, any incriminatory statements Carter made during his interview with Detective VanCleef should be suppressed.[5]

This court's holding is consistent with other decisions from this district that hold the same *Miranda* warnings are deficient for failure to adequately convey the defendant's right to consult with an attorney <u>before</u> answering any questions. *United States v. Chavez*, 111 F. Supp. 3d 1131, 1146 (D. Nev. 2015); *United State v. Larry Loucious*, Case No. 2:15-cr-106-JAD-CWH, Doc. No. 75 (D. Nev. filed Feb. 19, 2016).

2. <u>Carter's Interview Should Have Terminated After His First Request for Counsel</u>

Even if Carter received adequate *Miranda* warnings, his incriminating statements should still be suppressed.  After Carter's first request for counsel, all interrogation should have ceased until Carter was provided with counsel or initiated further communication.  As Carter was not provided with counsel and he did not initiate further communications, any incriminating statement made after Carter's first request for counsel should be suppressed.

/// /// ///

/// /// ///

---

[4] A defendant's prior experience with the criminal justice system, does not relieve law enforcement of its obligation to give the defendant a complete *Miranda* warning. *Bland*, 908 F.2d at 474 n.1. Here, Carter's subsequent requests for counsel: (1) "Do I need a lawyer for this? Am I going to need a lawyer?" and (2) "I think I'm going to get a lawyer on this one," do not show that Carter understood he had the right to consult with an attorney before answering any questions. It is unclear what Carter understood his rights to be at the time of his requests or if Carter understood that he would have been able to consult with counsel had one been provided to him.

[5] Carter also argues his *Miranda* warnings were inadequate for failure to inform him that he could stop the questioning at any time until he spoke with a lawyer. (Doc. #28 at 5).  Carter's argument is unpersuasive; as "a defendant need not be informed of a right to stop questioning after it has begun." *United State v. Lares-Valdez*, 939 F.2d 688, 689 (9th Cir. 1991).

i. *Carter's First Request for Counsel Properly Invoked His Miranda Right to Counsel*

"[A]fter a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless that suspect clearly requests an attorney." *Davis v. United States*, 512 U.S. 452, 461 (1994) ("[M]aybe I should talk to a lawyer," was an ambiguous request for counsel).

"Invocation of the *Miranda* right to counsel, 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'" *Id.* at 459 (internal citation omitted). A defendant "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* The defendant's words that invoke his right to counsel, must be taken "as ordinary people would understand them." *United States v. de la Jara*, 973 F.2d 746, 750 (9th Cir. 1992). "Doubts must be resolved in favor of protecting the constitutional claim." *Michigan v. Jackson*, 475 U.S. 625, 633 (1986).

"Requests for counsel are to be given broad effect even when less than all-inclusive." *Robinson v. Borg*, 918 F.2d 1387, 1391 (9th Cir. 1990) ("I have to get me a good lawyer, man. Can I make a phone call?" was an unambiguous request for counsel); *see also Shedelbower v. Estelle*, 885 F.2d 570, 571-73 (9th Cir. 1989) ("You know, I'm scared now. I think I should call an attorney," was an unambiguous request for counsel).

Once the defendant invokes his right to counsel, all interrogation must cease until counsel is present, "unless the [defendant] himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).

Here, Carter's questions, "Do I need a lawyer for this? Am I going to need a lawyer?" followed by his statement, "I don't like where this is going already," constituted an unambiguous request for counsel. Carter's request is the similar to the request made in *Shedelbower*. In *Shedelbower*, the Ninth

6

Circuit held that the defendant's statement, "[y]ou know I'm scared now," immediately followed by his assertion that, "I think I should call an attorney," constituted an unambiguous request for counsel. 885 F.2d at 571-73. Here, Carter expressed his state of mind, "I don't like where this is going already," and combined it with a statement alluding to his desire for the help of counsel, "Do I need a lawyer for this?" Taken together, Carter's statements, like the *Shedelbower* request, manifested the requisite "expression of a desire" for the help of counsel. *Davis*, 512 U.S. at 461. A reasonable police officer, under these circumstances, would have understood Carter's statements to be a request for counsel.

Accordingly, Carter's interrogation should have ceased at this point until counsel was present or Carter initiated further communications. As Detective VanCleef continued to ask Carter questions about Carter's alleged involvement with the victim, after Carter invoked his right to counsel, any incriminatory statements made after Carter's first request for counsel should be suppressed.

ii. *Carter Did Not Initiate Further Communication With Detective VanCleef* [6]

A defendant initiates further communication with law enforcement if, under the circumstances, the defendant's words or actions can be "fairly construed" as a desire to initiate further communication with law enforcement. *See United States v. Michaud*, 268 F.3d 728, 737 (9th Cir. 2001) (defendant initiated further communication when she had another inmate tell a sheriff's deputy that she "needed talk to somebody about a murder.")

Here, Carter's statement after his first request for counsel cannot be "fairly construed" as an initiation of further communication with Detective VanCleef. After making his first request for counsel, Carter stated, "Yeah. I don't – I don't know like I said. I mean I know a lot of girls man." The detective then resumed questioning Carter about his alleged involvement with the victim. Unlike the

---

[6] It is clear from Carter's interview transcript that he was not provided counsel at any time during his interview with Detective VanCleef. (Doc. #28-1).

defendant's request in *Michaud*, Carter did not express a desire to talk to the detective nor did Carter mention a specific crime; Carter simply stated he knew a lot of girls.  A fair interpretation of Carter's statement does not lead to the conclusion that Carter wanted to talk to the detective.  As Carter did not initiate further communication after invoking his right to counsel, his continued questioning was improper.  Carter's subsequent incriminating statements should, therefore, be suppressed.

               iii. *Carter Was Not Subject to Interrogation After His Second Request for Counsel*

Once the defendant invokes his right to counsel, all interrogation must cease until counsel is present, "unless the [defendant] himself initiates further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484-85.  Incriminating statements made after the defendant invokes his right to counsel are admissible so long as the statements are not the product of interrogation. *Shedelbower*, 885 F.2d at 573.

"[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).  "Interrogation is defined not only as express questioning but its 'functional equivalent.'" *United States v. Moreno-Flores*, 33 F.3d 1164, 1168-69 (9th Cir. 1994).

"The standard for determining whether an officer's comments or actions constitute the 'functional equivalent' of interrogation is quite high." *United States v. Foster*, 227 F.3d 1096, 1103 (9th Cir. 2000). "The fact that [statements made by an officer] may have struck a responsive chord, or even that they may have been constituted 'subtle compulsion' is insufficient to find that they were the 'functional equivalent' of interrogation." *Compare Moreno-Flores*, 33 F.3d at 1169-70 (informing defendant that he was in "serious trouble" after law enforcement seized 600 pounds of cocaine from his vehicle was not the "functional equivalent" of an interrogation), *with United States v. Brown*, 720 F.2d 1059, 1068-69 (9th

Cir. 1983) (calling the defendant a "pimp and doper" and stating that he "sells [drugs] to little black children" was the "functional equivalent" of an interrogation).

The courts use "an objective test to determine whether questioning constitutes interrogation." *Moreno-Flores*, 33 F.3d at 1169. "Although the officer's subjective intent is relevant, it is not decisive, because in determining whether interrogation occurred, the focus is upon the defendant's perceptions." *Id.* "Nonetheless, the police are not held accountable for the unforeseeable results of their words or actions." *Id.*

Here, Carter was not subject to interrogation after his second request for counsel. The Government does not dispute that Carter's second request for counsel was unambiguous and unequivocal; rather the Government argues that Carter's subsequent incriminating statements were not the product of interrogation.

After Carter made his second request for counsel, Detective VanCleef's statements shift dramatically. The detective stopped asking Carter questions, informed Carter of the new charges being brought against him, and limited his responses to Carter's questions to short statements, such as "okay," "right," and "yes sir." Upon being informed of the new charges, Carter stated that he knew the victim, came with her to Las Vegas, but denied being involved in her prostitution. Because Detective VanCleef stopped asking Carter questions, the issue is whether the detective's statements were the "functional equivalent" of interrogation. Informing Carter of his new charges was not the "functional equivalent" of interrogation. Detective VanCleef's statements may have struck a "responsive chord," but the detective had no reason to know that simply informing Carter of his new charges would elicit an incriminating response. *Moreno-Flores*, 33 F.3d at 1169-70.

Had Carter's second request for counsel been his only invocation of his right to counsel, his subsequent incriminating statements would be admissible. Carter, however, previously invoked his right

9

to counsel, which the detective failed to respect.  Carter's incriminating statements, made after his second request for counsel, should be suppressed as they were made well after Carter's interview should have been terminated.

ACCORDINGLY, and for good cause shown,

IT IS HEREBY RECOMMENDED that Carter's Motion to Suppress (Doc. #28) should be GRANTED.

IT IS FURTHER RECOMMENDED that all incriminating statements made during Carter's interview with Detective VanCleef should be suppressed.

IT IS SO RECOMMENDED.

DATED this 4th day of March, 2016.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE