1

2

3

4

5

6

7 **UNITED STATES DISTRICT COURT**

8 **DISTRICT OF NEVADA**

9

10 UNITED STATES OF AMERICA,

11     Plaintiff,                                   Case No. 2:15-cr-322-KJD-VCF

12 v.

13 ANDREW DEWAYNE CARTER,                           **ORDER**

14     Defendant.

15

16         Presently before the Court are the Report and Recommendation (#34) of Magistrate Judge

17 Cam Ferenbach entered March 4, 2016 recommending that Defendant's Motion to Suppress (#28) be

18 granted.  Objections to Magistrate Judge's Report and Recommendation (#36) were filed by the

19 Government pursuant to Local Rule IB 3-2 of the Local Rules of Practice of the United States

20 District Court of the District of Nevada. Defendant filed his response (#40) to the Government's

21 objections on April 7, 2016 and the Government filed a reply (#42) on April 13, 2016.

22         The Court has conducted a *de novo* review of the record in this case in accordance with 28

23 U.S.C. § 636(b)(1) and LR IB 3-2. The Court determines that the Report and Recommendation (#34)

24 of the United States Magistrate Judge entered March 4, 2016, should be reversed in part.

25

26

**I. Background**

On November 17, 2015, a federal grand jury issued an indictment charging defendant with conspiracy to commit sex trafficking in violation of 18 U.S.C. § 1591(a)(1), (b)(1), and (c); sex trafficking, in violation of 18 U.S.C. § 1591(a)(1), (b)(1), and (c); conspiracy to transport for prostitution, in violation of 18 U.S.C. § 2423(a); transportation for prostitution, in violation of 18 U.S.C. § 2423(a); and travel with intent to engage in illicit conduct, in violation of 18 U.S.C. § 2423(b).

On September 18, 2015, Defendant Carter was interviewed by Metro Detective VanCleef about Defendant's possible involvement in sex trafficking. The interview was recorded and transcribed, in which Detective VanCleef identified himself and asked Defendant his name and date of birth. Detective VanCleef then gave Defendant the following <u>Miranda</u> warnings:

> "Okay Andrew, um, you have the right to remain silent. Anything you say can be used against you in a court of law. You have the right to the presence of an attorney. If you can't afford an attorney one will be appointed before questioning. Do you understand your right?"

(# 34 at 2).

After Defendant acknowledged that he understood his rights, Detective VanCleef began questioning Defendant about his background and criminal history. The Detective then moved on to Defendant's possible involvement in prostitution and sex trafficking. When Detective VanCleef questioned the Defendant about his alleged involvement with the victim, Defendant Carter stated the following:

Carter: "Do I need a lawyer for this? Am I going to need a lawyer?"

Detective VanCleef: "I can't - I can't - I can't advise you yes or no. If you want one..."

Carter: "I mean I don't , um, you feel me? I don't like where this is going already."

Detective VanCleef: "Fine."

1    This was labeled by the Magistrate Judge as Defendant's First Request for Counsel. The

2    Detective then asked a couple of questions regarding the victim and a motel near Defendant's

3    apartment. At this point, Defendant Carter stated the following:

4    Carter: "But I think I'm - I think I'm going to get a lawyer on this one."

5    Detective VanCleef: "Okay"

6    This was labeled by the Magistrate Judge as Defendant's Second Request for Counsel.

7    Following Defendant's Second Request for Counsel, Detective VanCleef ceased all questions and

8    limited his responses to phrases such as; "Okay," "Fine," and "I can't really talk 'cause you asked for

9    a lawyer[.]" See # 36 Ex. 1 at 16-17. Detective VanCleef then informed Defendant that he would be

10   rebooked on charges related to sex trafficking.

11   Defendant moved to suppress the incriminating statements he made in his interview with

12   Detective VanCleef on two grounds: 1) Defendant was not given adequate Miranda warnings; and 2)

13   Detective VanCleef did not stop the interview when Defendant first invoked his right to counsel. See

14   # 28.

15   **II. Miranda Analysis**

16   The Fifth Amendment guarantees that no person "shall be compelled in any criminal case to

17   be a witness against himself." U.S. Const. Amendment V. The Supreme Court held that the Fifth

18   Amendment affords a citizen the right to be informed prior to custodial interrogation that "he has the

19   right to remain silent, that anything he says can be used against him in a court of law, that he has the

20   right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for

21   him prior to any questioning." Miranda v. Arizona, 384 U.S.436, 479 (1966). The Supreme Court

22   does not require a "talismanic incantation ... to satisfy [Miranda's] strictures." California v. Prysock,

23   453 U.S. 355, 359 (1981). Further, courts reviewing the adequacy of warnings "need not examine

24   Miranda warnings as if construing a will or defining the terms of an easement." Duckworth v. Eagan,

25   492 U.S. 195, 203 (1989). However, the warnings given must "adequately convey notice of the right

26

1  to consult with an attorney before questioning." <u>People of the Territory of Guam v. Snaer</u>, 758 F.2d

2  1341, 1342 (9th Cir. 1985)**.**

3       In his report and recommendation, Magistrate Judge Ferenbach relying, in part, on recent in

4  District holdings, found that the <u>Miranda</u> warnings given to Defendant were not explicit enough to

5  inform Defendant that he had the right to consult with an attorney *before* questioning. <u>Id.</u> at 1342;

6  <u>United States v. Chavez</u>, 111 F. Supp. 3d 1131, 1146 (D. Nev. 2015); <u>United States v. Larry</u>

7  <u>Loucious</u>, Case No. 2:15-cr-106-JAD-CWH, Doc. No. 75 (D. Nev.  Feb. 19, 2016).

8       However, the Court agrees with the reasoning in <u>United States v. Davis</u>, No. 2:12-cr-289-

9  JCM-PAL, 2016 WL 3092110, at *3 (D. Nev. June 1, 2016), and has looked to the warning as a

10  whole to determine if the Defendant was adequately informed of his rights under <u>Miranda</u>. The Court

11  finds that although Detective VanCleef didn't explicitly state that Defendant had a right to consult

12  with an attorney *before* questioning, a reasonable suspect would have understood that right after

13  hearing all the <u>Miranda</u> warnings. Namely the warnings that Defendant had "the right to the presence

14  of an attorney," and that if he "can't afford an attorney one will be appointed *before* questioning."

15  (#34 at 2) (emphasis added). In sum, the Court determines the Detective properly informed the

16  Defendant of his rights under <u>Miranda</u>.

17       Therefore, the Court reverses the Magistrate Judge's determination that the <u>Miranda</u> warning

18  was inadequate and the conclusion that Defendant's statements should be suppressed.

19  **III. Request for Counsel Analysis**

20       <u>A. First Request for Counsel</u>

21    Law enforcement officers must immediately cease questioning a suspect who has clearly

22  asserted his right to have counsel present during custodial interrogation. <u>Edwards v. Arizona</u>, 451

23  U.S. 477, 482 (1981). However, "if a suspect makes a reference to an attorney that is ambiguous or

24  equivocal in that a reasonable officer in light of the circumstances would have understood only that

25  the suspect might be invoking the right to counsel, our precedents do not require the cessation of

26  questioning." <u>Davis v. U.S.</u>, 512 U.S. 452, 459 (1994). Many courts have determined whether

statements made by defendants during questioning were unambiguous requests for counsel. See Id. at 462 ("Maybe I should talk to a lawyer" held to be ambiguous); U.S. v. de la Jara, 973 F.2d 746, 750 ("Should I get an attorney?" determined to be an ambiguous reference to counsel); Norman v. Ducharme, 871 F.2d 1483, 1486 (defendant asking whether "he should get an attorney" is ambiguous); Shedelbower v. Estelle, 885 F.2d 570, 571 ("You know, I'm scared now. I think I should call an attorney." found to be an unequivocal request for counsel).

The Magistrate Judge, comparing this case to Shedelbower, held that Defendant's questions; "Do I need a lawyer for this? Am I gonna need a lawyer?," combined with his subsequent statement; "I don't like where this is going already," constituted an unambiguous request for counsel. However, this Court finds that Defendants statements are distinguishable from Shedelbower, because he was asking the Detective if he should obtain counsel rather than stating his intent to obtain counsel. See Id. at 571. The Court determines that Defendant's references to counsel are more comparable to de la Jara and Norman because they are questions, rather than statements of intent. De la Jara, 973 F.2d at 750; Norman, 871 F.2d at 1486. Thus, the Court finds that Defendant's "First Request for Counsel" was not an unequivocal request for counsel.

Accordingly, the Court reverses the Magistrate Judge's determination that Defendant's statements should be suppressed because the request for counsel was equivocal.

B. Second Request for Counsel

However, the Court agrees with the Magistrate Judge's finding that had Defendant's second request for counsel been his only request for counsel, his subsequent statements would be admissible. Therefore, because the Court finds that the First Request for Counsel was ambiguous, Defendant's statements are admissible despite the fact that his Second Request for Counsel was unambiguous and unequivocal, because the statements made after the Second Request for Counsel were not the product of interrogation.

**IV. Conclusion**

      IT IS THEREFORE ORDERED that the Magistrate Judge's Report and Recommendation (#34) entered March 4, 2016, is **REVERSED in part**, and Defendant's Motion to Suppress (#28) is **DENIED**.

      DATED this 30th day of June 2016.

_____
Kent J. Dawson
United States District Judge